UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cr-20845-RAR/Becerra

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAIME ESCOBAR MEZA,

    Defendant.

_____/

**REPORT AND RECOMMENDATION[1] ON DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

**THIS CAUSE** came before the Court on Jaime Escobar Meza's ("Defendant") Motion for Compassionate Release (the "Motion"). ECF No. [67]. The United States of America (the "Government") filed a Response to Defendant's Motion, ECF No. [69], and Defendant filed a Reply, ECF No. [71]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendant's Motion be **DENIED**.

**I.    BACKGROUND**

On February 20, 2020, Defendant pled guilty to Count I of the Indictment, which charged him with conspiracy to possess with intent to distribute five kilograms or more of cocaine onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503(a)(1) and 70506(b). ECF Nos. [23], [24]. Although Defendant's advisory

---

[1] This matter was referred to the undersigned by the Honorable Rodolfo A. Ruiz, II, United States District Judge. ECF No. [72].

guideline range was 135 to 168 months, the District Court granted a downward variance and sentenced Defendant to 108 months of imprisonment followed by five years of supervised release. *See* ECF No. [59] at 2–3.  As such, Defendant's expected release date is August 2, 2027.  ECF No. [69] at 2.  Currently, Defendant is being held at Giles W. Dalby Correctional Institute ("Dalby"), a private facility that contracts with the Bureau of Prisons (the "BOP").  ECF Nos. [67] at 2; [69] at 2.  As of the date of the filing of the instant Motion, Defendant had served 17 months of his 108-month sentence.  ECF Nos. [67] at 2; [69] at 16.

On November 23, 2020, Defendant submitted a *pro se* request for compassionate release to Dalby's warden, citing "his obesity, history of respiratory problems, and the risk COVID-19 posed to him."  ECF No. [67].  The warden denied his request because Defendant has not been diagnosed with a disease that puts him at a high risk for COVID-19, Defendant has an ICE detainer, and Defendant does not have a legal status to remain in the United States.  ECF No. [67-2].  Defendant appealed the warden's decision and Defendant's counsel subsequently submitted a request for compassionate release, but thirty days have passed, and counsel has not received any decision.  ECF Nos. [67] at 2–3; [67-3]; [67-4].

As an initial matter, Defendant states, and the Government concedes, that the instant Motion is properly before the Court because more than thirty days have passed since the warden's decision was appealed and defense counsel submitted the request for compassionate release.  *See* ECF No. [67] at 2–3.  Moreover, the Government does not dispute that Defendant could be eligible for compassionate release under Section 3582 despite being a Colombian national.  *See id.* at 3–4.  On the merits, Defendant first argues that "obesity, respiratory issues, and COVID-19 infection, as well as the lack of access to adequate hygiene resources, place him at risk of serious COVID-19 complications and reinfection, and his continued incarceration substantially diminishes his

ability to provide self-care, establishing an 'extraordinary and compelling reason' for release." *Id.* at 6. Defendant contends that based on his height of 5'3" and weight of 202 pounds, he has a body mass index of 35.8, which qualifies him as obese. *Id.* at 8–9. Thus, according to the CDC, Defendant is "at a higher risk of serious illness from COVID-19 complications." *Id.* at 9. Second, Defendant submits that his medical history reveals ongoing treatment for lung issues, pneumonia, pneumonia-related asthma, and gastric bacteria for which the BOP has prescribed medication, but his symptoms have not improved. *Id.* at 10–11. Third, Defendant contends that his status as a racial and ethnic minority makes him more vulnerable to COVID-19 complications. *Id.* at 11. Finally, Defendant notes that his past COVID-19 diagnosis "presents an extraordinary and compelling reason to grant him compassionate release" because many inmates continue to suffer from symptoms and long-term complications. *Id.* at 11–12. Additionally, studies suggest that immunity wears off and those who were infected once and may be at risk of re-infection approximately 90 days after the infection's onset date. *Id.* at 12–13.

Furthermore, Defendant contends that "the lack of sanitation and ability to social distance, in conjunction with the court-recognized chance of reinfection, presents an extraordinary and compelling reason for release." *Id.* at 19. To that extent, Defendant emphasizes that his medical needs are better addressed at home where he can practice social distancing and seek medical attention should he become sick. *Id.* at 18. In addition, Defendant argues that he has served approximately 18 percent of his sentence and "given the pandemic and his vulnerability to COVID-19 complications and reinfection, the service of this sentence adequately reflects the seriousness of his offense, promotes respect for the law, and has provided just punishment for his offense." *Id.* at 20. Finally, Defendant states that upon release he would be transferred to ICE

custody at which time he would immediately agree to deportation to Colombia where he could return home to his family. *Id.*

In response, the Government first makes note of the BOP's response to the pandemic. ECF No. [69] at 3. The Government states that upon arrival, inmates are quarantined for 14 days and tested, inmate movement is restricted to promote social distancing, masks are required for inmates and staff, the staff's symptoms are screened daily, visitations have been suspended at most institutions, and outside entry is restricted to essential services. *Id.* at 3–4. Moreover, when an outbreak occurs, infected inmates and contacts are quarantined and tested for a two-week period. *Id.* at 4. At the time the Response was filed, Dalby housed 1,756 inmates, had zero infections, 92 past infections, and 3 deaths. *Id.* at 5. The Government further notes that vaccines were administered to all willing staff members and the plan was to offer the vaccine to every inmate by June 1, 2021. *Id.* at 5–6.

The Government states that the mere existence of COVID-19 and the possibility that it may spread does not in and of itself warrant compassionate release. *Id.* at 9. However, it recognizes that "an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition" may satisfy the requirements for release. *Id.* As to Defendant, the Government states that although he carries the risk factor "of being over-weight with a history of respiratory problems[,]" he would be offered the vaccine by June 1, 2021, which would enable self-care and vitiate any extraordinary and compelling circumstances. *Id.* at 11. Moreover, Defendant is relatively young and does not present any obesity-related ailment that would make his health condition extraordinary and compelling. *Id.* at 12. In the Government's view, Defendant's lack of serious ailments compounded with the fact that he had COVID-19 and

recovered without significant consequence weigh against release. *Id.* at 12–13. In addition, the Government states that Defendant continues to pose a danger to the community because his offense, which took place just two years ago, involved over one ton of cocaine. *Id.* at 16. Finally, the Government notes that Defendant has only served approximately 16 percent of his sentence such that release at this point would not constitute proper punishment for his offense. *Id.*

In his Reply, Defendant first notes that the BOP's COVID-19 data is unreliable and the Government's reliance on it is unpersuasive. ECF No. [71] at 1–2. Defendant argues that the Court should not rely on the BOP's alleged vaccination efforts because there is no evidence that Defendant has been offered a vaccine, that he will be vaccinated any time soon, or that the Dalby's staff and inmates would accept the vaccine when offered. *Id.* at 3–5. Moreover, even if Defendant was vaccinated, there is still a probability that he could contract COVID-19 before being fully vaccinated and even after. *Id.* at 5–6. Finally, Defendant argues that, "given the pandemic and his vulnerability to COVID-19 complications and reinfection, the service of this sentence adequately reflects the seriousness of his offense, promotes respect for the law, and has provided just punishment for his offense." *Id.* at 8.

On August 27, 2021, Defendant filed a Supplement to his Motion. ECF No. [73]. Therein, Defendant includes his education history, work history, and PATTERNS score. *Id.*; ECF No. [73-1]. Defendant submits that the records included in the Supplement demonstrate that the Section 3553 factors weigh in favor of compassionate release. ECF No. [73] at 1. Specifically, the records show that Defendant is on a GED track, regularly works over forty hours per week at $0.12 per hour, routinely receives a score of 5 ("outstanding") for the work performed and has been categorized as "Low Risk" for violence by the BOP. *Id.*

Finally, upon the Court's request, on September 28, 2021, the Parties submitted a Joint Notice of Defendant's Vaccination Status. ECF No. [75]. The Partis indicate the Defendant is fully vaccinated. *Id.* at 1. "[H]e received his first shot on May 5, 2021, and his second shot on June 3, 2021." *Id.*

## II. ANALYSIS

Title 18, United States Code, Section 3582(c)(1)(A) permits a defendant to seek compassionate release after he has exhausted his administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"). Once the administrative remedies have been exhausted, a court may grant compassionate release if it finds "extraordinary and compelling reasons" and that granting the relief requested "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i)–(ii). The applicable policy statement issued by the Sentencing Commission provides that a court may reduce a term of imprisonment upon a determination that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(1)–(3). In turn, the policy statement defines "extraordinary and compelling reasons" as follows:

> (A) Medical Condition of the Defendant.—
>    (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>    (ii) The defendant is—
>       (I) suffering from a serious physical or medical condition,

>>(II) suffering from a serious functional or cognitive impairment, or
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) Family Circumstances.—
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

Section 3582(c)(1)(A) also requires that a court consider "the factors set forth in [S]ection 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Specifically, Section 3553(a) sets forth the factors to be considered in imposing a sentence, including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1)–(7). The burden is on

the defendant to establish that compassionate release is warranted. *United States v. Rodriquez-Orejuela*, 457 F. Supp. 3d 1275, 1282 (S.D. Fla. 2020).

As an initial matter, it is undisputed that Defendant's status as a Columbian national with an ICE detainer does not preclude him from seeking compassionate release. *See* Order Granting Defendant's Unopposed Motion for Compassionate Release, *United States v. Arenales-Monroy*, No. 16-CR-20374-KMW (S.D. Fla. June 18, 2020), ECF No. [47] (granting motion for compassionate release to enable ICE to execute a pending detainer). Moreover, it is undisputed that Defendant has exhausted his administrative remedies because over 30 days have passed since "the receipt of [his] request by the warden of the [Dalby] facility." 18 U.S.C. § 3582(c)(1)(A).

However, the Court concludes that Defendant has not demonstrated extraordinary and compelling reasons to warrant compassionate release. Indeed, courts in this District have found that inmates with chronic medical conditions, as identified by the CDC, may be eligible for compassionate release because they are at an elevated risk of becoming seriously ill from COVID-19. *See* Order Granting the Defendant's Motion for Compassionate Release, *United States v. Laing*, No. 18-cr-20731-RNS, at 2–3 (S.D. Fla. Aug. 24, 2020), ECF No. [66] (concluding that a "72-year-old inmate suffering from a recent history of prostate cancer, hypertension, adenopathy, and bladder disorder" established extraordinary and compelling circumstances); Order Granting Renewed Motion to Modify Sentence, *United States v. Woolley*, No. 19-cr-80093-RLR, at 3 (S.D. Fla. Aug. 20, 2020), ECF No. [111] (concluding that the defendant's Type II diabetes, mellitus, and obesity place him at a high risk of severe illness from COVID-19); Order, *United States v. Mendez-Trenches*, No. 08-cr-20767-UU, at 1, 5 (S.D. Fla. Aug. 17, 2020), ECF No. [957], (concluding that Defendant established extraordinary and compelling circumstances because he is

"70 years old and suffers from numerous medical conditions including chronic obstructive pulmonary disease, asthma, and coronary artery disease").

Defendant states that his obesity and respiratory issues place him at risk for serious COVID-19 complications. The CDC has identified certain underlying conditions that increase the risk of severe illness from COVID-19, including obesity.[2] Specifically, the CDC has defined a BMI of 30 to less than 35 as "Class 1" obesity, a BMI of 35 to less than 40 as "Class 2" obesity, and a BMI of 40 or greater as "Class 3" or "severe" obesity.[3] In this case, although Defendant's BMI of 35.8 qualifies him as obese per CDC guidelines, his medical records do not reflect any history of respiratory issues. Instead, Defendant's medical records only reveal that he had a bacterial infection in his stomach, but that he underwent treatment and regularly receives medication for any gastric issues. *See* ECF No. [70-1]. Thus, on this record, Defendant's only qualifying medical condition is obesity, which *alone* does not present an extraordinary condition. *United States v. Rojas*, No. 18-20923-CR-Altman, 2021 WL 1895810, at *5 (S.D. Fla. May 11, 2021) (concluding that "a BMI over 30 doesn't, standing alone, justify early release") (citing *United States v. Battis*, No. 8:15-cr-429-T-02AAS, 2020 WL 5094844, at *2 (M.D. Fla. Aug. 28, 2020)); *e.g.*, Order, *United States v. Siegert*, No. 13-cr-80009-CMA, at 2, 6 (S.D. Fla. Aug. 13, 2020), ECF No. [53] (finding that a defendant "that suffer[ed] from obesity, hyperlipidemia, hypertension, phlebitis, and thrombophlebitis" and had served 89 percent of his sentence was eligible for compassionate release).

---

[2] *See* CDC, *People with Certain Medical Conditions* (Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity.
[3] *See* CDC, *Defining Adult Overweight & Obesity* (June 7, 2021), https://www.cdc.gov/obesity/adult/defining.html.

9

Moreover, Defendant already had COVID-19 and there is no record evidence to suggest that he suffered any complications. *See Rojas*, 2021 WL 1895810, at *5 (finding no extraordinary or compelling circumstances where the defendant had COVID-19 and recovered without any complications). Additionally, Defendant has been fully vaccinated against COVID-19 since June 2021. *See* ECF No. [75]. Thus, the vaccine's protection against serious COVID-19 complications considerably weakens his argument. *See United States v. Parker*, No. 06-60130-CR, 2021 WL 2434270, at *3 (S.D. Fla. June 14, 2021) ("Defendant argues that he has a high probability of being exposed to COVID-19 but the extensive availability of vaccines clearly rebuts that dated argument."). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Notwithstanding, even if Defendant's medical condition were to weigh in favor of compassionate release, the Court must consider the Section 3553(a) factors. To be sure, Defendant's offense of conspiracy to possess with intent to distribute over one ton of cocaine was significant, and at the time the Motion was filed, Defendant had only served 17 months of his 108-month sentence. Releasing Defendant now, when he has only served a small portion of his reduced sentence, would not promote respect for the law, provide punishment for his offense, or afford adequate deterrence. Thus, although the Court commends Defendant's disciplinary record and is sympathetic to his health condition, it concludes that releasing Defendant starkly contrasts with inmates seeking release after serving the majority of their sentence. *See, e.g.*, Order, *United States v. Martinez*, No. 11-cr-20288-DLG, at 1–2 (S.D. Fla. Aug. 17, 2020), ECF No. [98] (granting compassionate release to a 69-year-old cancer survivor with hypertension and asthma after he

served 162 months of his 168-month sentence); Order, *United States v. Weems*, No. 18-cr-60185-BB, at 10–11 (S.D. Fla. Aug. 7, 2020), ECF No. [187] (concluding that a defendant with obesity, sickle cell disease, Type II diabetes, and hypertension who had served 72 percent of his sentence was eligible for compassionate release). Defendant has just begun serving his sentence and his release now would undermine the goals of just punishment and general deterrence. Therefore, because the Court finds that the Section 3553(a) factors are inconsistent with Defendant's release, his Motion should be denied.

### III. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendant's Motion, ECF No. [67], be **DENIED**.

### IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Any request for an extension of this deadline must be made within seven (7) calendar days from the date of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on October 4, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**